### APPEAL OF FARMERS & TRADERS BANK.

Docket No. 2248.   Decided August 5, 1926.

1. The taxpayer credited to another corporation, which was the record owner of real property, the sum of $1,500, to be drawn upon and used by the latter to pay taxes and interest charges due on land in which taxpayer owned a beneficial interest. *Held*, under the facts, the amount is not deductible by taxpayer either as a bad debt or as interest and taxes paid by it.

2. An order of the State Banking Department, without further evidence of worthlessness, is not sufficient to authorize a taxpayer to deduct from gross income securities held by it and charged off in pursuance of such order.

3. A sale of securities to another corporation resulting in a profit, although sold at an inflated value, results in taxable income to the seller, notwithstanding the fact that the two corporations were allied and had interlocking directorates.

*Alexander W. Smith, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the Commissioner.

50144°—27——51

Before STERNHAGEN, LANSDON, and LOVE.

This appeal is from the determination of a deficiency in income tax for the year 1919 in the amount of $2,163.25.

The taxpayer assigns the following errors:

(1) The disallowance of the sum of $1,500, charged by the taxpayer to profit and loss account by reason of a payment the taxpayer was compelled to make to protect its interests in real estate.

(2) The disallowance of a deduction from gross income of $9,785, representing shares of stock of corporations ordered charged off the taxpayer's books by the State Banking Department of Georgia.

(3) The computation of a profit of $9,840 on the sale of 176 shares of Bankers Trust Co. stock sold by taxpayer to a friendly connection through interlocking directorates.

### FINDINGS OF FACT.

As associate corporations and closely connected with the taxpayer by interlocking directorates were the Bankers Financing Co., the Bankers Trust Co., and the Harper & Weathers Realty Co.

Some time about 1911 or 1912 the Bankers Financing Co. ceased functioning in an active manner and was superseded by the Bankers Trust Co., and all of its stock was taken over by holders of the stock of the Bankers Trust Co., which subsequently performed the functions theretofore performed by said financing company.

In 1914 a certain piece of real estate was purchased and title to same taken in the name of Harper & Weathers Realty Co., in which company the taxpayer was the holder of a majority of the stock. The initial cash payment consisted of $13,250, paid by Harper & Weathers Realty Co., and $9,250, paid by the taxpayer, under an agreement that each of the corporations should share the equity in said property in proportion to payments made. The property was purchased subject to a large encumbrance.

In January, 1919, the taxpayer carried on its books an overdraft against the Harper & Weathers Realty Co. of $632.87.

In 1919 interest on the said real estate debt, as well as taxes on same, matured and the Harper & Weathers Reatly Co. was unable to pay said obligations.

The taxpayer deposited to the credit of said realty company $1,500, against which it checked in payment of said taxes and interest claims, and at the close of the year 1919 there was an overdraft charge of $759.40. Said real estate was closed out by sale at a loss in 1921 to 1923.

In 1919 the taxpayer owned 45 shares of the stock of the Interstate Securities Co. and 17 shares of the stock of the Harper & Weathers

Realty Co., which shares were carried on the books at a valuation of $9,785 and were ordered charged off the books by the State bank examiner.

In order to comply with the order of the bank examiner and at the same time preserve its surplus fund unimpaired, it sold to the Bankers Financing Co. 176 shares of the Bankers Trust Co. at an inflated value, to the extent of $9,840 above the March 1, 1913, value—that is, it sold said stock at $215 plus, per share. The market value of said stock in 1919 was $165 per share.

The taxpayer received at date of said sale for said stock the sum of $38,000, payment being made as follows:

| | |
|---|---:|
| Cash | $10,000.00 |
| Note due September 25, 1920 | 9,333.33 |
| Note due September 25, 1921 | 9,333.33 |
| Note due September 25, 1922 | 9,333.34 |

Deferred payments were to draw 7 per cent interest, payable semiannually. The record discloses the payment of notes one and two. Whether or not note three was paid is not disclosed.

### OPINION.

Love: There are three distinct points contended for by the taxpayer:

(1) That the sum of $1,500 which was credited to the account of Harper & Weathers Realty Co. and with which the latter company paid its interest and taxes should be allowed as a deduction from gross income, either as a bad debt or as interest and taxes paid during the year 1919.

In the year 1914, as set forth in the findings of fact, the Harper & Weathers Realty Co. purchased and acquired title to a certain piece of real estate. During the year 1919 interest and taxes became due and payable with reference to the real estate so purchased. The Harper & Weathers Realty Co. found itself unable to meet such demands and the taxpayer, owning a beneficial interest in the property, agreed to advance to the record owner of the property the sum of $1,500 for the purpose of meeting the matured payments for interest and taxes. The credit extended was a loan and the same did not become a bad debt in the year 1919. The assets of the Harper & Weathers Realty Co. may not have exceeded its liabilities, but the company did own tangible assets which might have at any time enhanced in value and enabled it to meet fully its outstanding obligations. It was not determined during the year that the credit extended was a bad debt such as to be deductible from gross income.

The taxpayer did not pay the $1,500 as interest on its indebtedness or as taxes on its property during the year—but loaned a sum for

that purpose to another taxpayer. Hence the $1,500 is not deductible as interest or taxes which the taxpayer paid, or as a liability which accrued during the year.

(2) The taxpayer contends that, because it sold stock at an inflated value to a corporation with which it was closely associated, it should not be charged with receipt of income resulting from the transaction.

Taxpayer sold to the Bankers Financing Co. 176 shares of the Bankers Trust Co. at an inflated value, to the extent of $9,840 above the March 1, 1913, value. It was a *bona fide* sale between two corporations the consideration being cash and an enforceable obligation. The parties to the transaction made their own terms and the taxpayer must be bound by the same in so far as taxation may result on the profit of $9,840.

It may be true that the transaction savors of an intercompany transaction, but there is no evidence before us of affiliation as prescribed by section 240 of the Revenue Act of 1918.

(3) The taxpayer contends that, by reason of the fact that the bank examiner ordered the taxpayer to charge off the 45 shares of the Interstate Securities Co. stock and the 17 shares of the Harper & Weathers Realty Co. stock, and that said stock had theretofore been carried on its books at a valuation of $9,785, it should be permitted to deduct that amount from gross income, as a bad debt.

The order of a bank examiner to charge off an account is not, *per se*, sufficient evidence to justify its deduction as a worthless debt. *Appeal of The Murchison National Bank*, 1 B. T. A. 617.

There was no evidence presented in regard to the value of the Interstate Securities Co. stock, but the evidence did disclose the fact that the Harper & Weathers Realty Co. stock did have a very substantial value. The company remained in existence and bought and sold real estate until as late as 1922 or 1923.

*Judgment for the Commissioner.*